NOT DESIGNATED FOR PUBLICATION

No. 114,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALBERT DONETT TAYLOR, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed July 14, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN, J., and PATRICIA MACKE DICK, District Judge, assigned.

*Per Curiam*: After a jury trial in Johnson County, Kansas, Albert Donett Taylor, Jr., was found guilty of battery on a law enforcement officer. The district court granted a downward durational departure and sentenced Taylor to serve 29 months' imprisonment, which was to run concurrent with a sentence on an unrelated conviction. Taylor filed this direct appeal of his conviction.

1

In January 2015, Taylor was charged with battery on a law enforcement officer. Taylor was accused of knowingly causing bodily harm to, or knowingly causing physical contact with, a county correctional officer, Matthew Curry, in a rude, insulting, or angry manner, while Curry was engaged in the performance of his duties, and that this contact was done by Taylor while confined in the Johnson County Adult Detention Center.

At trial, testimony from Curry and two of his fellow correctional officers was taken, and Taylor testified on his own behalf. All of the witnesses testified generally consistently with each other.

Taylor was booked into the Johnson County Detention Center at approximately noon on the day in question; he had been in a holding cell for more than 8 hours by the time Curry began moving men from the holding cell to the dressing process. There were about 26 men in the holding cell in addition to Taylor. Curry began moving the men alphabetically and in groups of 10 to the dressing process. Taylor was agitated because men who had been there a shorter amount of time were getting called out ahead of him. After the second group of 10 men was called out, Curry became concerned that Taylor's agitation could be disruptive and escalate into a fight if left in the holding cell with the other 6 men. Curry decided to move Taylor to an adjacent cell, which he unlocked and propped open with his left foot. When Taylor did not respond to Curry's request that he step out, Curry ordered him to step out and Taylor complied, but only up to the threshold of the holding cell and then he stopped.

Curry reached out and took Taylor's upper left arm with his right hand in an attempt to guide Taylor into the adjacent cell. Taylor testified, "[H]e was already trying to escort me out of the room." Taylor physically tried to break away from Curry's hold, but Curry did not let go. Taylor was disturbed that Curry "'put [his] hands on [him],'" and

2

Taylor "started pulling away." At that point, Taylor swung his left side and arm away from Curry with more force, causing Curry to lose his grasp on Taylor and hit his right hand into the wall. The force of Curry's hand hitting the wall ripped the nitrile glove he was wearing, caused Curry immediate pain and swelling, the hand became discolored, and the pain and swelling diminished the use of his hand for more than 2 weeks after the incident. X-rays revealed that no bones in the hand were broken, but it was badly bruised.

After the incident, Taylor was not attempting to have further physical contact with anyone else, but he was still agitated and noncompliant, so he was escorted to a padded cell. At trial, Taylor testified that he could not recall if he used profanity with Curry and that he did not recall hitting Curry's hand against the wall. Taylor testified that once in the padded cell, he was still agitated and angry so he began "venting [his] frustrations" by "fighting the air."

At trial, in addition to witness testimony, the State's evidence consisted of video footage from various angles of the incident, and photographs of Curry's hand taken within minutes of the altercation. The photos show a hand, reddened and with some faint purple coloring, as well as a small laceration.

Video footage from the record on appeal showed Curry opening a door, allowing several men to exit the cell and make their way to rows of chairs. There was a short pause, after which Curry opened an adjacent door, propped it open with his left foot, and motioned for someone to step out of the first cell; Taylor stepped out. Curry motioned for Taylor to go into the adjacent cell; Taylor did not move, so Curry reached out with his right hand, took Taylor's upper left arm, and attempted to draw Taylor into the adjacent cell. Taylor appeared to push at Curry and then made several jerking motions backwards with his left arm and side as he attempted to move away from Curry. Approximately 5 or 6 other officers rushed to the area in front of the adjacent cell while approximately 10 other inmates looked on from the chairs. It appeared that Taylor moved into the adjacent

3

cell after all of the other officers came over. Once the officers stepped away from the door, Taylor stepped back out and appeared to look at Curry's hand that Curry appeared to be showing to him. The group of officers then escorted Taylor to a padded cell without further incident.

The padded cell camera view showed that Taylor entered, paced for a few minutes, and then began punching the wall. Over the next few minutes, he bounced up and down, "air boxed," stretched, and punched at or on the walls. After approximately 10 minutes, he attempted to look under the door but then sat down until the footage ended.

The parties did not object to the jury instructions. At the close of evidence, the district court instructed the jurors that they should consider and weigh everything admitted into evidence, that it was the State's burden to prove Taylor guilty beyond a reasonable doubt, and that it was up to them to determine the weight and credit to give the testimony of each witness, and that they could use their common knowledge and experience in that regard. The judge also instructed the jury regarding the elements of the charge and gave a detailed instruction on "knowingly." The jury was provided with the trial exhibits during deliberations.

The jury found Taylor guilty of battery against a law enforcement officer. Taylor's criminal history score was F and his presumptive prison sentence range was 41-44-47. The district court granted a downward durational departure and sentenced Taylor to 29 months to run concurrent with a sentence from an unrelated conviction.

Taylor filed a timely appeal.

4

Taylor contends that the evidence presented at his trial was insufficient to prove beyond a reasonable doubt that he knowingly caused physical contact with Curry. When the sufficiency of the evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

To be found guilty of battery on a law enforcement officer, the State was required to prove beyond a reasonable doubt that Taylor knowingly caused physical contact with Curry in a rude, insulting, or angry manner. Taylor essentially concedes the other elements were met by the State. The crux of Taylor's argument is that Curry touched him first (*i.e.*, Curry caused the physical contact) and that Taylor was just pulling away because he did not want to be touched. Taylor alludes to an affirmative defense of self-defense but cites no authority in support of this. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

The only question is whether the evidence demonstrated that Taylor was aware of the nature of his conduct, of the circumstances in which he was acting, or that his conduct was reasonably certain to cause the result complained about by the State. The jury was in possession of the exhibits during deliberations, including the video, and the jurors heard all of the testimony. The jury was instructed as to the definition of knowingly and as to its responsibility to weigh evidence and credibility. Juries are presumed to have followed the instructions given by the district court. *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075

(2014); *State v. Fulton*, 269 Kan. 835, 842, 9 P.3d 18 (2000). Taylor does not make any arguments to rebut this presumption, and it is not this court's role to second guess the jury or reweigh the evidence. *Daws*, 303 Kan. at 789.

Based on the evidence admitted at trial, when taken in the light most favorable to the State, it was reasonable for the jury to find that Taylor's physical acts of force in freeing himself from Curry's hold on his arm were done with an awareness of the nature of that act of force and an awareness of his circumstances as in inmate engaged in a physical altercation with a correctional officer. While Taylor may not have intended to injure Curry's hand, it was not unreasonable for the jury to determine that he knowingly used force against Curry. We affirm.

Affirmed.

\* \* \*

LEBEN, J., concurring: I agree with my colleagues that there's sufficient evidence to support Albert Taylor's conviction for battery on a law-enforcement officer. But there's a bit more to this case than initially meets the eye.

As the majority opinion sets out the facts, what may have happened here was that Taylor simply pulled away from Deputy Matthew Curry while Curry was trying to grab Taylor, "causing Curry to lose his grasp on Taylor and hit his right hand into the wall." If that was all Taylor did, I would find the evidence insufficient. To convict Taylor, the State had to prove that he knowingly caused physical contact with Curry. But what the State complains about is Curry's contact with the wall, and if all Taylor did was pull away, the State would not have proved that Taylor was aware that his conduct was reasonably certain to cause the result complained about—which is required in these

6

circumstances for a knowing act. See *State v. Kershaw*, 302 Kan. 772, 780, 359 P.3d 52 (2015) (citing K.S.A. 2014 Supp. 21-2502[i]).

Here, though, there was also some testimony that Taylor's movements directly catapulted Curry's arm into the wall. Curry testified, "As I took a hold of his arm to guide him into the cell, he yelled at me. When he didn't break my grasp, *he slung his left arm back, slamming my right hand into the wall*." (Emphasis added.) And another witness, Master Deputy Steven Headley, said, "Mr. Taylor threw his hands up, throwing Mr. Curry's hands up fast."

The State accurately summarizes the reasonable inferences from this testimony: "With Curry holding Taylor's upper arm, Taylor threw his hands up, making contact with Curry's hand, which, in turn, hit the door frame of the cell door." We are of course required to take the evidence in the light most favorable to the State since the factfinder, the jury, ruled in the State's favor. See *State v. Brown*, 305 Kan. 674, 689, 387 P.3d 835 (2017). Based on the evidence viewed in that light, I concur with the court's opinion affirming the defendant's conviction.