IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,548

STATE OF KANSAS,
*Appellee*,

v.

DAVID ALLEN KERSHAW,
*Appellant.*

SYLLABUS BY THE COURT

1.

Under K.S.A. 2014 Supp. 21-5412, the statutory definition of the crime of aggravated assault of a law enforcement officer committed with a deadly weapon expresses the requisite mental culpability to be "knowingly."

2.

A crime which is defined by a statute that expresses the mental culpability requirement as "knowingly" is a general intent crime.

3.

Voluntary intoxication is not a defense to general intent crimes.

4.

In the prosecution of a general intent crime, it is legally appropriate for the district court to instruct the jury that voluntary intoxication is not a defense to the charged crime.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 8, 2014. Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed September 25, 2015.

1

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Sarah Ellen Johnson*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State charged David Allen Kershaw with four counts of aggravated assault of a law enforcement officer committed with a deadly weapon after Kershaw shot at police officers responding to a 911 call from Kershaw's wife. At trial, Kershaw presented evidence showing that when he fired his weapon, he was heavily intoxicated. The district court, however, instructed the jury that voluntary intoxication was not a defense to the charged crimes. The Court of Appeals held this instruction was clearly erroneous because it allowed the State to convict Kershaw without proving he acted knowingly—the mental state required to prove aggravated assault of a law enforcement officer committed with a deadly weapon. *State v. Kershaw*, No. 109,548, 2014 WL 3907084, at \*10 (Kan. App. 2014) (unpublished opinion).

We granted the State's petition for review, which argued that because aggravated assault of a law enforcement officer committed with a deadly weapon is a general intent crime, the district court correctly instructed the jury. We agree with the State, reverse the Court of Appeals, and affirm the district court.

2

FACTUAL AND PROCEDURAL OVERVIEW

On Saturday, February 4, 2012, Kershaw and his wife, De'De, got into an argument about her plans to attend a baby shower for Kershaw's niece, with whom Kershaw had a strained relationship. After De'De left to attend the shower, Kershaw consumed several beers. Once De'De returned home, Kershaw drank nearly a half-gallon of whiskey. At the time, Kershaw was taking approximately 20 different medications daily.

When the couple retired to bed, they were unable to sleep. At 4 a.m., De'De got out of bed. Kershaw also got up and then retrieved a semi-automatic pistol from under the bed. De'De tried to put the pistol away, which prompted Kershaw to hit De'De. Kershaw then walked to the kitchen to get ammunition for the pistol. He loaded a magazine and inserted it into the pistol, at which point the weapon discharged.

De'De called 911 and informed the dispatcher that Kershaw had discharged a firearm inside their residence. She explained that Kershaw was intoxicated and "out of control." Five officers responded to the house. They positioned themselves approximately 75 to 80 yards from the house for safety reasons and attempted to persuade Kershaw to come to them. Kershaw paced between his residence and porch, carrying the pistol, for approximately 45 minutes. A crisis negotiator talked with Kershaw on the phone and opined that Kershaw was very intoxicated or heavily medicated.

Eventually, Kershaw raised his pistol in the direction of four of the officers and fired one shot. An officer returned fire until Kershaw fell. The officers then took Kershaw into custody and rendered aid to him.

Based on these events, the State charged Kershaw with four counts of aggravated assault of a law enforcement officer committed with a deadly weapon and one count of domestic battery. Prior to trial, Kershaw informed the State that he intended to assert a defense of voluntary intoxication. Kershaw provided the State with a psychiatric evaluation report prepared by Dr. William Logan based upon Logan's examination of Kershaw. In the report, Logan opined that "at the time Mr. Kershaw fired at officers, and earlier when he struck his wife, he was intoxicated due to alcohol [and] an adverse reaction to [several prescription medications] to the extent he was unable to form intent."

The State filed a motion in limine to exclude the report and Logan's testimony, arguing that because voluntary intoxication is not a defense to general intent crimes, Logan's conclusion on intent should be excluded. The district court found that aggravated assault is a general intent crime and, therefore, voluntary intoxication was not an available defense. Nevertheless, the district court ruled that Logan could "testify regarding the general effect of drugs and alcohol on the human body," so long as he did not testify "as to their effect on this defendant specifically on the dates he is alleged to have committed the crimes." At trial, the district court found Logan was an expert in psychiatry and Logan testified in compliance with the pretrial order.

Kershaw testified that he did not recall his interaction with the officers outside his house. He explained that he would never knowingly or willingly fire a weapon at police officers.

Without objection, the district court instructed the jury that "[v]oluntary intoxication is not a defense to a charge of aggravated assault to a law enforcement officer and domestic battery." The jury found Kershaw guilty of all four counts of aggravated assault of a law enforcement officer committed with a deadly weapon and not

4

guilty of domestic battery. The district court sentenced Kershaw to 38 months' imprisonment.

Kershaw appealed to the Court of Appeals, arguing the district court erred in denying Kershaw the right to present evidence in support of the defense of voluntary intoxication, in not instructing the jury on the defense of voluntary intoxication, and in instructing the jury that voluntary intoxication was not a defense. The Court of Appeals held that because aggravated assault of a law enforcement officer committed with a deadly weapon is a general intent crime, the defense of voluntary intoxication was unavailable to Kershaw. *Kershaw*, 2014 WL 3907084, at *7. Accordingly, the panel held that the district court did not err in precluding Kershaw from presenting evidence of voluntary intoxication and in failing to instruct the jury on the defense. 2014 WL 3907084, at *7, 9. Nevertheless, the panel held that it was clearly erroneous to instruct the jury that voluntary intoxication is not a defense because it relieved the State of its burden of proving that Kershaw acted knowingly, the mental state required to prove assault. 2014 WL 3907084, at *10.

The State petitioned this court for review of the Court of Appeals' holding that the "voluntary intoxication is not a defense" instruction was clearly erroneous.

THE VOLUNTARY INTOXICATION IS NOT A DEFENSE INSTRUCTION

The State contends that the district court's instruction that voluntary intoxication is not a defense accurately stated the law and, therefore, the instruction was not erroneous. The State further contests the notion that the instruction negated the State's burden of proving criminal intent, as the Court of Appeals found. Our caselaw and current statutory law favor the State's position.

*Standard of Review*

> "For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

In this case, the legally appropriate inquiry will turn on whether the crime of aggravated assault on a law enforcement officer committed with a deadly weapon is a general or specific intent offense. "Whether a criminal statute establishes a general intent or a specific intent offense is a legal question over which appellate courts exercise unlimited review." *State v. Richardson*, 289 Kan. 118, 121, 209 P.3d 696 (2009).

*Analysis*

Kershaw did not object to the instruction he successfully challenged in the Court of Appeals. But as the Court of Appeals recognized, even when a jury instruction issue has not been properly preserved, relief may still be granted if the instruction was clearly erroneous. *Kershaw*, 2014 WL 3907084, at *9; see *State v. Smith*, 299 Kan. 962, 979, 327 P.3d 441 (2014) (citing K.S.A. 22-3414[3]). To determine whether giving the instruction was clearly erroneous, we must first decide if there was error. To determine if there was error, we "consider whether the subject instruction was legally and factually appropriate,

6

employing an unlimited review of the entire record." *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012).

For each count of aggravated assault of a law enforcement officer, the jury was instructed:

"To establish this charge, each of the following claims must be proved:
    "1. The defendant knowingly placed [the officer] in reasonable apprehension of immediate bodily harm.
    "2. [The officer] was a uniformed or properly identified County law enforcement officer.
    "3. [The officer] was engaged in the performance of his duty.
    "4. The defendant did so with a deadly weapon.
    "5. This act occurred on or about the 5th day of February, 2012, in Shawnee County, Kansas.
    "No bodily contact is necessary."

This instruction was modeled after PIK Crim. 4th 54.290 and derives its authority from K.S.A. 2014 Supp. 21-5412. In 2011, the legislature repealed the assault, aggravated assault, and aggravated assault of a law enforcement officer statutes and enacted K.S.A. 2014 Supp. 21-5412 covering all three crimes. L. 2010, ch. 136, secs. 47, 307 (effective July 1, 2011); see also L. 2011, ch. 30, sec. 18 (effective July 1, 2011). That statute provides:

"(a) Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm;
    . . . .
    "(c) Assault of a law enforcement officer is assault, as defined in subsection (a), committed against:

(1) A uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of such officer's duty; or

(2) a uniformed or properly identified university or campus police officer while such officer is engaged in the performance of such officer's duty.

"(d) Aggravated assault of a law enforcement officer is assault of a law enforcement officer, as defined in subsection (c), committed:

(1) With a deadly weapon;

(2) while disguised in any manner designed to conceal identity; or

(3) with intent to commit any felony." K.S.A. 2014 Supp. 21-5412.

The jury was additionally instructed that "[v]oluntary intoxication is not a defense to a charge of aggravated assault to a law enforcement officer . . . ." This instruction was modeled after PIK Crim. 4th 52.050, which is entitled "Voluntary Intoxication—General Intent Crime" and provides: "Voluntary intoxication is not a defense to the charge of *insert crime*." PIK Crim. 4th 52.050 derives its authority from K.S.A. 2014 Supp. 21-5205(b) (previously codified at K.S.A. 21-3208[2]), which provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

The voluntary intoxication statutory subsection has been in place without amendment since 1970. L. 1969, ch. 180, sec. 21-3208 (effective July 1, 1970). Pursuant to this subsection, we have long held that although "'voluntary intoxication is not a defense to general intent crimes, such a defense may be used to negate the intent element of a specific intent crime.'" *State v. Hilt*, 299 Kan. 176, 192-93, 322 P.3d 367 (2014) (quoting *State v. Kidd*, 293 Kan. 591, 594, 265 P.3d 1165 [2011]); see also *State v. Sterling*, 235 Kan. 526, 528-29, 680 P.2d 301 (1984) (noting that even before K.S.A. 21-

8

3208 was enacted, Kansas courts "held that voluntary drunkenness is not a defense to a general intent crime but may be a defense to a specific intent crime").

Conforming to statutory law, the Court of Appeals' panel held "[a] plain reading of the assault and mental culpability statutes define aggravated assault on a law enforcement officer as a general intent crime." *Kershaw*, 2014 WL 3907084, at *7. Therefore, because the voluntary intoxication defense is available only for specific intent crimes, the panel held the defense was unavailable to Kershaw. 2014 WL 3907084, at *7. Accordingly, the district court was correct in declining to instruct the jury that voluntary intoxication could be a defense for Kershaw.

Nevertheless, the panel held that it was clearly erroneous for the district court to instruct the jury on that exact legal proposition by stating that "voluntary intoxication is not a defense to the crime of aggravated assault on a law enforcement officer." 2014 WL 3907084, at *9. The panel reasoned that this instruction effectively relieved the State of its burden to prove that Kershaw acted "knowingly," as required under K.S.A. 2014 Supp. 21-5412(a). 2014 WL 3907084, at *9-10.

We disagree with the distinction drawn by the Court of Appeals. If an instruction on voluntary intoxication is not legally appropriate because it is not a recognized defense in a particular case, then instructing the jury that voluntary intoxication is not a defense in that case cannot also be legally inappropriate. The jury is entitled to know the law applicable to the case before it, including whether the defendant can employ a voluntary intoxication defense to the charges against him or her. Accordingly, our task boils down to a determination of whether the Court of Appeals was correct in holding that the charged offenses were general intent crimes. See *State v. McDaniel & Owens*, 228 Kan. 172, 177-78, 612 P.2d 1231 (1980) (determining whether voluntary intoxication not a defense instruction was proper by determining if the crime was a general or specific

intent crime); see also *State v. Andrew*, No. 104,666, 2011 WL 6942933, at *4-5 (Kan. App. 2011) (unpublished opinion) (same), *aff'd on other grounds* 300 Kan. 616, 333 P.3d 140 (2014); *State v. Scott*, No. 94,417, 2006 WL 1976611, at *2-4 (Kan. App.) (unpublished opinion) (same), *rev. denied* 282 Kan. 795 (2006).

The State cites to several Court of Appeals' opinions classifying aggravated assault as a general intent crime. See *State v. Hawkins*, 40 Kan. App. 2d 10, 14, 188 P.3d 965 (2008), *rev. denied* 287 Kan. 767 (2009); *State v. Eichman*, 26 Kan. App. 2d 527, 530, 989 P.2d 975, *rev. denied* 268 Kan. 850 (1999); *State v. Esher*, 22 Kan. App. 2d 779, 783, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996); *Andrew*, 2011 WL 6942933, at *5. On the other side of the argument, Kershaw argues that *Hawkins* supports a specific intent finding even though the panel used general intent language. Nevertheless, all of the cited cases discuss the pre-2011 amendment version of our assault statutes. Because the current statutory language answers the question presented, we need not ruminate over whether prior statutory language classified a prior-defined crime as a general or specific intent crime.

The current version of the crime, set forth in K.S.A. 2014 Supp. 21-5412, required the State in this case to prove an assault, as defined in subsection (a), of a law enforcement officer, as provided in subsection (c)(1), committed with a deadly weapon, as provided in subsection (d)(1). Particularly germane in this case, the assault is defined as "*knowingly* placing another person in reasonable apprehension of immediate bodily harm." (Emphasis added.) K.S.A. 2014 Supp. 21-5412(a). The reference to "knowingly" is especially cogent to our analysis because, in 2011, our legislature also enacted a new culpable mental states statute, which provides as follows:

> "(a) Except as otherwise provided, a culpable mental state is an essential element
> of every crime defined by this code. A culpable mental state may be established by proof

10

that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'

"(b) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

(1) Intentionally;

(2) knowingly;

(3) recklessly.

. . . .

"(f) If the definition of a crime prescribes a culpable mental state that is sufficient for the commission of a crime, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the crime, unless a contrary purpose plainly appears.

"(g) If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided.

"(h) A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes. A crime may provide that any other culpability requirement is a specific intent.

"(i) A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. *All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes.*" (Emphasis added.) K.S.A. 2014 Supp. 21-5202.

11

As noted, the criminal intent required for the assault element of the charged crime is "knowingly." K.S.A. 2014 Supp. 21-5412(a). The statute does not specifically prescribe a culpable mental state for the other elements of aggravated assault of a law enforcement officer committed with a deadly weapon. Thus, we need only concern ourselves with the meaning of "knowingly" in determining whether the crime is a general intent crime. See K.S.A. 2014 Supp. 21-5202(g).

Facially, then, K.S.A. 2014 Supp. 21-5202(i) specifically answers our question as to whether aggravated assault of a law enforcement officer committed with a deadly weapon is a general intent crime by telling us that "[a]ll crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes." Then, because a voluntary intoxication instruction is not applicable to a general intent crime, it was not clearly erroneous to instruct the jury of that legal principle.

But the discussion cannot end here. We must acknowledge our recent holding in *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015), where we opined that "the legislature does not intend for 'general intent' to necessarily mean what it once did."

In *Hobbs*, the issue was the sufficiency of the evidence to support an aggravated battery conviction under K.S.A. 2011 Supp. 21-5413(b)(1)(A), which required the State to prove that Hobbs "'[k]nowingly caus[ed] great bodily harm to another person or disfigurement of another person.'" 301 Kan. at 205. The jury was instructed that aggravated battery is a general intent crime; that the requisite general intent is merely the intent to engage in the underlying conduct which results in great bodily harm; and that the State was not required to prove that the defendant intended the precise harm or result that occurred. Hobbs' argument—that the statute's reference to "knowingly" applies to both the defendant's underlying act and its specific resulting harm—required this court to

12

go beyond the statutory language in search of what the State had to prove under the amended aggravated battery and mental culpability statutes. Ultimately, *Hobbs* determined that the "knowingly" mental culpability requirement for aggravated battery fell somewhere between the State's underlying-act-only position and Hobbs' specific-harm-resulting position, so that the State must prove "that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result." 301 Kan. at 210-11.

*Hobbs* found it necessary to go beyond a plain language, straightforward rationale in order to give effect to the acts that the legislature intended to criminalize in the particular aggravated battery statute and to harmonize various statutes. 301 Kan. at 210. Here, we have no such dilemma. As previously noted, this court has long held that the defense of voluntary intoxication is unavailable for general intent crimes. See, *e.g.*, *Sterling*, 235 Kan. at 529-30 ("the law is now well settled that voluntary intoxication is not a defense to a general intent crime").

Moreover, construing the general intent language of K.S.A. 2014 Supp. 21-5202(i) to mean something different than it has traditionally meant with respect to the defense of voluntary intoxication would not harmonize with K.S.A. 2014 Supp. 21-5205(b), which only permits voluntary intoxication to be taken into consideration when determining intent or state of mind "when a particular intent or other state of mind is a necessary element to constitute a particular crime." We "presume[] that the legislature acted with full knowledge and information about the statutory subject matter, prior and existing law, and the judicial decisions interpreting the prior and existing law and legislation." *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009). Consequently, we hold that the legislature's designation of a general intent mental culpability requirement where a crime is defined by the term "knowingly" continues to express a legislative intent that a voluntary intoxication defense is unavailable for that crime.

To summarize, aggravated assault of a law enforcement officer committed with a deadly weapon is a general intent crime. Voluntary intoxication is not a defense to the prosecution of a general intent crime. A "voluntary intoxication is not a defense" instruction is legally appropriate in a prosecution for aggravated assault of a law enforcement officer committed with a deadly weapon. Consequently, the district court's instruction that Kershaw's voluntary intoxication was not a defense to the charged crimes was not clearly erroneous.

The Court of Appeals decision reversing the district court is reversed. Kershaw's convictions are affirmed.