NOT DESIGNATED FOR PUBLICATION

No. 120,603

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN P. SUTTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed January 29, 2021. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

PER CURIAM: A jury found Sean Sutton guilty of aggravated assault after he threatened his mother with a kitchen knife. He appeals, arguing that various statements the prosecutor made during closing argument and the wording of the verdict form deprived him of a fair trial. Sutton also claims that the district court's posttrial finding in a journal entry that he committed this offense with a deadly weapon was insufficient to require him to register as a violent offender under the Kansas Offender Registration Act (KORA). After considering the parties' arguments and the record before us, we affirm Sutton's conviction and obligation to register under KORA.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2018, Sean Sutton was living with his girlfriend in his 73-year-old mother's basement in Wichita. Sutton came home late one evening in a foul mood, apparently upset with his boss after he had a bad day at work. When he arrived home, Sutton was staggering and his pupils were dilated, causing his mother to believe he was drunk.

Sutton asked his mother where dinner was; she replied that dinner was ready to eat in the kitchen. Sutton responded by shouting at her that he needed a "fucking steak knife." Sutton's mother went to get a knife for him and said something that apparently upset him. The two then began arguing about Sutton's behavior and proceeded to struggle over the cutlery drawer, which broke in the process. Sutton's girlfriend went outside to smoke a cigarette to avoid the fight, but she could still hear Sutton and his mother yelling from outside.

According to Sutton's mother, he then picked up a steak knife and "he stuck the knife in my face and said, you need to die so I can live the way I want to." Sutton's mother later testified that although he never made physical contact with her and she was not injured in any way, Sutton had the knife pointed at her face and was aggressively waving it around in a slashing motion. (Sutton's girlfriend painted a different picture of the altercation, stating that although Sutton was only a couple feet from his mother, he never put the knife directly in her face.) Sutton's mother, who was scared and believed her son might stab her in the face, ran to the living room and called the police.

The State charged Sutton with aggravated assault and domestic battery. Sutton's case proceeded to trial, and the jury found him guilty of aggravated assault but not guilty

of domestic battery. Sutton appeals his conviction and the requirement that he register as a violent offender under KORA.

DISCUSSION

1. *Sutton received a fair trial.*

Sutton challenges several aspects of the State's actions and the district court's rulings at trial. He claims that the prosecutor committed reversible error during closing argument by misrepresenting various aspects of Kansas law. And he asserts the verdict form the district court provided to the jury undermined the presumption of his innocence and diminished the State's burden of proof. Sutton contends that these alleged errors, individually or in combination, deprived him of his right to a fair trial.

In the discussion that follows, we address each of Sutton's claims and find no error by the State or the district court. We thus affirm his conviction for aggravated assault.

1.1.    *The State did not commit prosecutorial error during closing argument.*

Sutton first challenges the fairness of his trial by asserting that the State committed prosecutorial error during closing argument. Sutton claims that the prosecutor's argument veered from the acceptable bounds of argument in three ways—by misstating an element of aggravated assault, by inaccurately telling the jury how to consider the lesser-included offense of assault, and by providing incorrect information concerning the defense of voluntary intoxication.

Appellate courts use a two-step analysis for evaluating claims of prosecutorial error. *State v. Chandler*, 307 Kan. 657, Syl. ¶ 5, 414 P.3d 713 (2018). First, we determine whether a prosecutor's actions fall outside the latitude afforded to attorneys arguing at trial. If a prosecutor engaged in impermissible conduct (that is, if the prosecutor erred), we proceed to the second step and consider whether the error is reversible—whether the

3

prosecutor's actions prejudiced the defendant's right to a fair trial under the constitutional harmless-error standard provided in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Chandler*, 307 Kan. 657, Syl. ¶¶ 6-7.

Sutton argues that the prosecutor first misled the jury in her arguments relating to the elements of aggravated assault. To prove Sutton committed this offense, the State needed to show that he knowingly placed another person (his mother) in reasonable apprehension of immediate bodily harm with a deadly weapon (the steak knife). K.S.A. 2019 Supp. 21-5412(b). Sutton contends that, despite this requirement, the prosecutor at one point during closing argument invited the jury to conclude merely that *a reasonable person*—not Sutton's mother herself—would have feared being injured by the knife.

Sutton points to the following line of argument by the prosecutor:

"You have the testimony of both [Sutton's mother] as well as the testimony of [Sutton's girlfriend], who was at the time in a relationship with the defendant and is still in a relationship with the defendant. Both of them described the defendant's actions with the knife that night. That these behaviors—would they be reasonable, would they put a typical person in fear of their safety? Someone yielding a knife in front of them within a short distance. Would it place someone in reasonable apprehension? Is it reasonable for someone to be scared of their safety in that moment?"

This argument arose in the context of the prosecutor's explanation of the reasonable-apprehension element. The prosecutor's statement cannot be viewed in isolation, but rather must be understood in light of her argument. Immediately before making the statement Sutton points to in his brief, the prosecutor stated:

"Looking at aggravated assault or even the lesser-included offense of assault, the first element that the defendant knowingly placed [his mother] in reasonable apprehension of immediate bodily harm. Basically did the defendant do something? *Did*

4

*he knowingly perform an action that made her scared that she would get hurt, that she would be injured?*" (Emphasis added.)

A prosecutor cannot deliberately misstate the law. *State v. Stone*, 291 Kan. 13, 18, 237 P.3d 1229 (2010); *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006). But the prosecutor here did not do so. When viewed in context, the prosecutor correctly stated the applicable element of aggravated assault. She then went on to explain why the State believed that Sutton's mother feared immediate injury when Sutton brandished the knife and why her fear was objectively reasonable. The prosecutor appropriately argued the elements the State was required to prove and did not misstate the law.

Sutton also argues the State inaccurately described the sequence in which the jury should consider the instructions relating to aggravated assault and the lesser-included offense of assault. In her closing argument, the prosecutor explained that the jury need only consider the lesser-included offense if the jurors did not agree on whether Sutton committed an aggravated assault by using a deadly weapon. She argued:

> "You *only look at the lesser-included offense of assault if you cannot agree on aggravated assault*. Ultimately *if you as a jury cannot agree* that element 2, that the defendant did so with a deadly weapon, *if you cannot agree on that element* and you are steadfast that you will not be able to agree, that is the only time you look at the lesser-included offense of assault. You don't even consider that instruction until you have decided and made a decision with regard to the aggravated assault instruction." (Emphases added.)

Sutton claims that this explanation was again a misstatement of the law. He argues that under *State v. Korbel*, 231 Kan. 657, 661, 647 P.2d 1301 (1982), a jury is not required to unanimously find a defendant innocent of a greater charge before moving on to consider a lesser-included charge. Sutton suggests that the jury should instead have simultaneously considered the charges for assault and aggravated assault.

We note, at the outset, that the portion of the prosecutor's argument Sutton now challenges was entirely consistent with the district court's instructions to the jury. In its instructions, the court explained, "If you do not agree Mr. Sutton is guilty of aggravated assault, you should consider the lesser-offense of assault." The court also instructed the jury that "[w]hen there is a reasonable doubt as to which of the two or more offenses the defendant is guilty, he may be convicted of the lesser offense only[,] provided the lesser-offense has been proven beyond a reasonable doubt." Both instructions follow the Pattern Jury Instructions approved by the Kansas Supreme Court. See PIK Crim. 4th 68.080 (2016 Supp.) (lesser-included offense instruction); PIK Crim. 4th 69.010 (2016 Supp.) (providing an example of a sequential consideration of primary and lesser-included offenses in the context of a first-degree murder charge); see also *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018) (the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity'" to jury trials).

Sutton did not object to these instructions at trial and does not challenge either instruction on appeal. Instead, he presents his claim as one of prosecutorial error, apparently arguing that the prosecutor erred when she explained the law in the same manner the court had instructed. We need not determine whether this is an appropriate avenue for presenting this claim, however, because Sutton's argument regarding simultaneous consideration is not supported by Kansas caselaw.

In *State v. Sims*, 308 Kan. 1488, 1501, 431 P.3d 288 (2018), the Kansas Supreme Court found that there is no "statutory or constitutional foundation" for requiring simultaneous consideration of a principle and lesser-included offense. After reviewing its caselaw, the court held that "the practical considerations involved in mandating simultaneous consideration by a jury of lesser included offenses weigh against the rule." 308 Kan. at 1503. The court thus overruled its earlier cases requiring simultaneous

6

consideration of offenses and clarified *sequential* consideration—the approach described by the prosecutor in Sutton's case—was "legally appropriate." 308 Kan. at 1505; see 308 Kan. 1488, Syl. ¶ 2.

It follows that the State did not err by telling the jury that it should proceed to consider the lesser-included offense of assault only if it could not agree whether Sutton committed aggravated assault. The prosecutor's statements did not misrepresent the law; rather, they were consistent with the Kansas Supreme Court's decision in *Sims* and the court's approved jury instructions. They were well within the bounds of permissible argument.

Lastly, Sutton challenges the prosecutor's statements regarding the unavailability of a voluntary-intoxication defense in this case. The district court did not instruct the jury on voluntary intoxication or the legal impact, if any, of Sutton's drunken state when he argued with his mother. But during the State's closing argument, the prosecutor commented that Sutton's inebriated state at the time of the incident could not be considered as a factor negating his mental culpability to commit aggravated assault: "You do not have that instruction because it does not apply to these crimes." Sutton argues that this was an incorrect statement of law and that the jury could have considered whether his intoxication prevented him from acting knowingly.

This position is incorrect. Kansas law defines aggravated assault, as it relates to this case, as "knowingly placing another person in reasonable apprehension of immediate bodily harm," when "committed . . . [w]ith a deadly weapon." K.S.A. 2019 Supp. 21-5412(a), (b)(1). Because the State must show a defendant committed this act knowingly, aggravated assault is a general-intent crime. K.S.A. 2019 Supp. 21-5202(i); see *State v. Kershaw*, 302 Kan. 772, 780-82, 359 P.3d 52 (2015) (concluding aggravated assault of a law enforcement officer is a general-intent crime since the offense must be committed

7

knowingly). And "[v]oluntary intoxication is not a defense to the prosecution of a general intent crime." 302 Kan. at 782.

In *Kershaw*, our Kansas Supreme Court held that it was "legally appropriate" for a district court to instruct the jury that "'voluntary intoxication is not a defense'" to the crime of aggravated assault of a law enforcement officer. 302 Kan. at 782. The court explained that "the legislature's designation of a general intent mental culpability requirement where a crime is defined by the term 'knowingly' continues to express a legislative intent that a voluntary intoxication defense is unavailable for that crime." 302 Kan. at 782.

Here, Sutton was charged with aggravated assault—a general-intent crime. As such, the prosecutor's statement that voluntary intoxication was not an available defense was a correct statement of the law. Sutton's third claim of prosecutorial error fails.

Sutton has not identified any error in the prosecutor's closing argument.

1.2.    *The verdict form was consistent with Kansas law and Kansas Supreme Court precedent.*

Sutton next challenges the organization of the verdict form, noting that the form placed the line where the jury could find him "guilty" above the line where the jury could find him "not guilty." He argues this arrangement inverted the presumption of innocence under the Sixth and Fourteenth Amendments to the United States Constitution and deprived him of a fair trial.

Kansas courts have traditionally reviewed verdict forms using the same standards utilized to review jury instructions because the verdict form is included as part of the packet sent to the jury. *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009). Despite the similarity of the standard of review, an important distinction

8

remains as a verdict form serves a different purpose from the court's instructions. While instructions inform the jury of the law it must follow and apply, the verdict form provides no such guidance; it simply records the jury's decision on each count, claim, or question presented.

Sutton argues that the arrangement of "guilty" and "not guilty" calls into question whether the jury followed the court's instructions that Sutton was entitled to the presumption of innocence and that the State bore the burden to prove his guilt beyond a reasonable doubt. As a preliminary matter, we observe that the facts in this case tend to undermine his argument—the verdict form included this same arrangement for both the aggravated-assault charge and the domestic-battery charge, and yet the jury only found him guilty of the former.

More importantly, however, Sutton's argument was rejected by the Kansas Supreme Court in *State v. Wesson*, 247 Kan. 639, 652-53, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), *disapproved on other grounds by State v. Rodgers*, 282 Kan. 218, 144 P.3d 625 (2006). Sutton claims *Wesson* was wrongly decided. But this court is duty-bound to follow Kansas Supreme Court precedent unless the court has indicated it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). For nearly 30 years, both this court and our Kansas Supreme Court have consistently applied the holding in *Wesson*. See *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004); *State v. Timmons*, No. 119,831, 2020 WL 3885621, at *7 (Kan. App. 2020) (unpublished opinion). The verdict form was not erroneous.

1.3.     *Sutton has not shown that any error, let alone cumulative errors, deprived him of a fair trial.*

In his final challenge to his conviction, Sutton argues that even if none of his arguments individually requires reversal, the combination—or cumulation—of the errors deprived him of a fair trial. We have previously analyzed Sutton's arguments and have

9

concluded that he has not shown any defect in his trial. See *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018) (cumulative error presupposes the existence of more than one error). Thus, Sutton's allegation of cumulative error is also without merit, and we affirm his conviction for aggravated assault.

2. *The district court's finding in its journal entry that Sutton committed the offense with a deadly weapon is sufficient to trigger KORA's registration requirements.*

Our discussion to this point has centered on Sutton's arguments regarding his jury trial. Sutton also challenges the district court's posttrial order that he must register as a "violent offender" under KORA.

The jury found Sutton guilty of aggravated assault based on his assault of his mother with the kitchen knife. After the jury announced its verdict, the district court provided Sutton with a written notice before sentencing that he would be subject to KORA's registration requirements since he committed his offense with a deadly weapon. At the sentencing hearing, the district court informed Sutton again that he was required to register as a violent offender under KORA, though the court made no oral finding that the aggravated assault was committed with a deadly weapon. Nevertheless, the journal entry of sentencing did include a finding that Sutton "committed the current crime with a deadly weapon as determined by the court." Sutton argues that this finding in the journal entry was insufficient to subject him to KORA's registration requirements.

KORA imposes various post-conviction registration requirements on "violent offender[s]." See K.S.A. 2019 Supp. 22-4902(e); see also K.S.A. 2019 Supp. 22-4901 et seq. (discussing registration requirements and timing); *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018) (summarizing requirements). K.S.A. 2019 Supp. 22-4902(e)(2) defines a violent offender, in part, as someone who is "convicted of any person felony" when the court "makes a finding on the record that a deadly weapon was used in the commission" of that offense. Whether Sutton falls within this definition is a question of

10

law over which our review is unlimited. *Marinelli*, 307 Kan. at 788; *State v. Gilkes*, 307 Kan. 725, 728, 415 P.3d 427 (2018).

There is no question that Sutton's conviction of aggravated assault is a person felony within the meaning of K.S.A. 2019 Supp. 22-4902(e)(2). The issue before us is whether the district court's finding in the journal entry is sufficient to satisfy the requirements of that statute. We conclude that it is.

Because aggravated assault is not an offense that automatically results in a requirement to register under K.S.A. 2019 Supp. 22-4902(e)(1), Sutton's conviction of aggravated assault, standing alone, does not trigger KORA's registration requirements. See *Marinelli*, 307 Kan. at 783. Nor is a district court's notice "dispositive to whether a person is an 'offender' and, therefore, subject to registration requirements." 307 Kan. at 791. Instead, the Kansas Supreme Court has interpreted K.S.A. 2019 Supp. 22-4902(e)(2) to require the district court to find—on the record—that the predicate offense was committed with a deadly weapon. *State v. Thomas*, 307 Kan. 733, 749, 415 P.3d 430 (2018).

Our Kansas Supreme Court considered circumstances analogous to Sutton's case in *State v. Carter*, 311 Kan. 206, 459 P.3d 186 (2020). There, the defendant was convicted of aggravated robbery. At sentencing, the district court indicated that the defendant would be required to register under KORA because there was "a dangerous weapon involved"—not that the robbery was "committed with a deadly weapon" as required by K.S.A. 2019 Supp. 22-4902(e)(2). But the district court's journal entry indicated the robbery had been committed with a "deadly weapon," as required by the statute.

The Kansas Supreme Court held that the finding recorded in the journal entry was sufficient to subject Carter to KORA's registration requirements. 311 Kan. at 210-11. The

11

court reasoned that KORA registration is not part of a defendant's sentence, but rather an independent statutory requirement. Thus, there is no requirement that the requisite KORA findings be pronounced from the bench. See 311 Kan. at 210 (citing *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 3, 160 P.3d 471 [2007], and distinguishing KORA registration from a defendant's sentence, which is effective upon pronouncement).

Though the district court made no oral finding regarding KORA's deadly-weapon requirement at sentencing in this case, its journal entry—like the *Carter* journal entry—includes that finding. As in *Carter*, we conclude that "the journal entry included in the record of this case shows the district judge made the necessary finding under K.S.A. 2019 Supp. 22-4902(e)(2)." 311 Kan. at 211. Thus, Sutton's challenge to his KORA registration requirement is without merit.

Affirmed.