No. 120,816

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

STEPHEN WAYNE BIRD,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

Judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

2.

Although the court disfavors reducing judicial estoppel to a precise formula or test, it has recognized four elements that must be satisfied for a party to assert judicial estoppel: (1) a position taken must contradict a declaration in a prior judicial action; (2) the two actions must involve the same parties; (3) the party asserting the theory must have changed its position; and (4) the changed position must have been in reliance on the prior statement.

3.

The State may not appeal from the dismissal of some of the counts in a multiple-count charging document while the remaining counts are still pending before the district court.

1

4.

The State's ability to amend charges in a grand jury indictment is limited by statute. Substantive amendments are prohibited except "for the limited purpose of effecting a change of plea by the defendant pursuant to a plea agreement reached between the defendant and the prosecuting attorney." K.S.A. 2017 Supp. 22-3015(b)(2).

5.

The authority to make charging decisions, including whether to dismiss a charge, rests with the county or district attorney. Kansas law recognizes the authority to control a prosecution includes the power to dismiss charges or decline further prosecution.

6.

The State can dismiss a grand jury indictment with leave of the court.

7.

An insufficient charging document does not divest a court of subject matter jurisdiction.

8.

There are three types of charging-document defects: (1) failing to satisfy the Kansas Constitution's requirement that the charge(s) be filed in the correct court and territory; (2) failing to allege facts that, if proved beyond a reasonable doubt, show the commission of a Kansas crime as required by state statutes; and (3) failing to meet the constitutional standards of providing the defendant due process and adequate notice of the charges. The first kind of defect creates a state constitutional error, the second is a state statutory error, and the third violates federal and state constitutional rights.

9.

A charging document does not have to include all essential elements of the charged offense to avoid a finding of insufficiency. The inquiry should compare the statutory definition of the charged crime to the State's factual allegations to determine whether those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty. If the charging document fails to pass this test, then the State has failed to properly invoke the subject matter jurisdiction of the court, and the court must fashion an appropriate remedy.

10.

The definitions of general and specific intent for Kansas crimes changed in 2011.

11.

K.S.A. 2019 Supp. 21-5508(b)(1) is now a general intent crime.

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed February 19, 2021. Reversed in part and dismissed in part.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellee/cross-appellant.

Before ARNOLD-BURGER, C.J., MALONE, J., and WALKER, S.J.

ARNOLD-BURGER, C.J.: After the parties selected the jury but before being sworn in, the district court dismissed one count of a grand jury indictment against Stephen Wayne Bird. The next morning, the State announced that it was dismissing the remaining charge to pursue a direct appeal. Over Bird's objection, the district court dismissed the

3

remaining charge and this appeal followed from the State. Bird filed a notice of cross-appeal arguing that the court should have dismissed the indictment before both dismissals because the grand jury process used by State resulted in the denial of his right to due process. Both parties also challenge whether this court has appellate jurisdiction to consider the claims raised by the other party on appeal. After reviewing the claims presented, we find that this court has jurisdiction over the State's appeal, the district court erred in dismissing Count 2 of the indictment, and this court lacks jurisdiction over Bird's cross-appeal. Accordingly, we reverse the district court's decision and dismiss Bird's cross-appeal.

FACTUAL AND PROCEDURAL HISTORY

In October 2017, a grand jury indicted Stephen Wayne Bird on charges of aggravated indecent liberties with a child under 14 years old, in violation of K.S.A. 2017 Supp. 21-5506(b) (Count 1); and aggravated indecent solicitation of a child under 14 years old, in violation of K.S.A. 2017 Supp. 21-5508(b) (Count 2). The indictment contains little to no factual information, but a review of other pleadings establishes that the charges stemmed from allegations that Bird touched a child on the leg in a restaurant and then invited her to come swim at his hotel.

On January 8, 2019, Bird moved to dismiss the indictment, arguing that the grand jury procedure used to obtain the indictment was defective. Bird contended that the only evidence presented to the grand jury was hearsay and was thus inadmissible under the Kansas rules of evidence.

A week later, Bird filed a notice of defect in Count 2, asserting in the motion that Count 2 as alleged in the indictment did not have the correct mens rea language. According to Bird, Count 2 was "therefore void and fail[ed] to vest jurisdiction on this Court [and] cannot be submitted to the jury."

4

At the hearing on Bird's motions the parties briefly discussed the notice of defect and agreed that the court need not rule on the issue at that time. As for the motion to dismiss, Bird called two witnesses to testify about the grand jury procedure. First, Sergeant Andrew Dale of the Shawnee County Sheriff's Office (SCSO) testified. Dale said he was the "designee" for the SCSO's Criminal Investigations Division who testified before grand juries when called on by the Shawnee County District Attorney's Office. According to Dale,

> "The DA's office, typically what they will do when they're preparing for a grand jury for the following week or whenever, they will e-mail me a list of cases. It will contain an agency—our agency case number and the name of a defendant. With that information, I'll pull the case up using our computer system. I'll usually research the charging affidavit, and then any narratives, and supplemental reports or paperwork that are in that case. Sometimes what they send me may include notes, if there are prior convictions that are taken into consideration or any underlying charges. If it's a superseding indictment, I research that."

Dale said that his grand jury testimony reflects his "research" and not his personal knowledge of a case.

Then, Kevin Keatley of the Shawnee County District Attorney's Office testified. Keatley said his role was to be a legal adviser for the grand jury, which involved presenting evidence to the grand jury. The testimony described by Dale is not the "exclusive source" of evidence but typically was the only verbal testimony presented. Keatley could not recall if he was involved in obtaining the grand jury indictment in Bird's case.

In closing argument, Bird's defense counsel reiterated the arguments made in the motion to dismiss. The State noted that it has briefed this issue "a number of times" and generally disputed whether the rules of evidence applied in grand jury proceedings in

5

Kansas. The State also asserted that criminal defendants have no constitutional rights of confrontation at that stage, then requested two days to file a response brief to the arguments made in Bird's motion.

The district court commented that "a lot of the Judges in this jurisdiction have had some concerns with regard to the grand jury proceeding given the fact that, you know, some cases it seems like it's extremely beneficial to have a preliminary hearing." The court then noted that under K.S.A. 22-2902 there are "relaxed rules of evidence" for a preliminary hearing that involves a victim of a felony under 13 years old. Ultimately, the court deferred ruling on the motion but said that K.S.A. 22-2902 "may cut against the defense['s] arguments in this situation. So, I'll just say that, and leave it at that at this point in time."

The State responded the morning of the first day of trial, and then the parties proceeded through voir dire and jury selection. The district court provided the standard instructions to the chosen jurors and then dismissed them for the day because of inclement weather, noting that the court would swear them in the following morning. The court then took up the issue presented by Bird's notice of defect.

As in the notice, Bird's defense counsel argued that the appropriate culpable mental state was "intentional" because of previous cases holding that aggravated indecent solicitation is a specific intent crime and because of the statute that says a specific intent crime requires intentional conduct. But "[f]or whatever reason, the grand jury returned an indictment requiring something less and found probable cause for knowing conduct, which is for general intent crimes. Intent is an essential element. You can't cure that by amending it. So that's the end of the story." Defense counsel also asserted that he filed the notice a week in advance so that the State could obtain a superseding indictment, but "[i]t's too late now."

6

The State asserted that based on K.S.A. 2017 Supp. 21-5202(e), any of the three recognized culpable mental states would suffice since the particular statutory subsection the grand jury charged Bird under did not include a culpable mental state. The district court ultimately chose to dismiss Count 2, noting in response to the State's position:

"That's not the way I've dealt with it in other cases. Certainly, we instruct on three separate culpable mental states. But I don't think the statute is written in a way that just says that the prosecution gets to pick one and just insert that in there. That was not my understanding.

"Certainly, PIK says that if it is silent and it is a crime that requires a culpable mental state, then the Court would instruct on all three, which would have been, typically, what I would've expected to do in this situation. That's one issue. So that concerns me that, for some reason, the State picked knowingly.

"And I understand the argument of Mr. Patterson, because the statute does seem to imply that it could be one of the three, any one of the three, but I don't think that's, certainly, the way that it was analyzed by the PIK committee, and it certainly is different from how I've dealt with other crimes that don't have a specific culpable mental state.

"The other issue that Mr. Joseph raises is based on *State v. Brown*. Now, I would note for the record that *State v. Brown* was a case based on the prior statute, not on the recodifications, though it is dealing with the same clause, which was the A clause in *Brown*, the statute was K.S.A. 21-3511(a), and the issue was whether or not that was a specific intent crime.

"And I believe the—well, let me pull it back up. The statute read, at that time, something very similar to the statute that we have right now. And so I think that the rationale in *Brown* is, really, certainly, compelling for this issue, because we are talking about a statute that is very, very similar to the current statute.

"And they cite the definition of solicitation, and they also cite an unpublished case, *Richardson v. State*. But they basically say that—as I read it, that there needs to be a specific intent to solicit or entice a child to commit an unlawful sex act. I'm going to dismiss Count II. I think it's problematic on both fronts."

That evening, the State moved to reconsider the dismissal of Count 2. But when the parties convened the next morning, the State announced that it was withdrawing the

motion to reconsider and dismissing Count 1 of the indictment without prejudice to pursue an interlocutory appeal. Bird's defense counsel noted that they had not researched the issue yet but believed the prejudicial effect on Bird should give him grounds to object to a last-minute dismissal.

The State responded that the motion was filed "days" before the trial, when ordinarily the State is statutorily allowed 21 days to respond to a motion to dismiss. The district court expressed a willingness to entertain the motion to reconsider, but the State said it did not believe the court could legally reinstate an indicted charge that it had dismissed.

Bird's defense counsel responded that he did not caption the notice as a motion to dismiss "because it wasn't really anything other than a notice that the language in the grand jury indictment is flawed." Defense counsel believed the remedy for that legal deficiency was to not submit the charge to the jury but agreed that the State would need to dismiss Count 1 in order to appeal the dismissal of Count 2. The district court then stated:

> "You know, if—I think this is a great disservice to the defense to proceed in this fashion.
> "Now, maybe the State was caught off guard. And I understand it was a notice of defect. Perhaps I overstepped by dismissing Count II when there wasn't a motion to dismiss and the State had not had their 21 days to respond. I looked at and I believed that there was, you know, certainly, a concern I had with regard to the charging by way of indictment, which misstated what the statute says.
> "But I think this is a grave injustice to the defense to dismiss at this point in time. I don't know where we are with speedy trial, if that would occur. I don't believe this dismissal is of necessity."

8

The State responded that "it is absolutely with necessity that we have to do this at this point." Defense counsel reminded the State that the alternative would have been to obtain a superseding grand jury indictment when defense first filed the notice a week before trial, to which the State said, "[a]nd we agree, you are right, which we didn't."

The State again declined to proceed with the motion to reconsider, stating there were concerns with the district court's jurisdiction to reinstate an indicted charge that was dismissed. The State contended there was no legal mechanism for reconsideration, and that the only options are interlocutory appeal or obtaining a superseding indictment. The court then declared a recess for the parties to perform more research.

After the recess, defense counsel asserted that the district court could not prevent the State from dismissing Count 1, explaining:

> "If [the State] dismisses, that the effect of that is something to be hashed out later. The effects of that are something that we deal with if they reinitiate a prosecution on Count I later, because there's factors that are yet to be decided, such as when, and why, and how, and a number of matters.
> "The only thing that I can do and would like to do is put on the record the prejudice that we are suffering, from our vantage, by them strategically—for the State to do this."

Defense counsel then explained that it was prepared for trial, with 11 witnesses ready to testify. Two of the three expert witnesses would need to be flown back for the eventual trial, and the defense would incur more expenses for their appearances. Moreover, "Bird's life is on pause, in a sense that he doesn't get finality."

The State said it "shares that same sentiment and prejudicial effect," but that it "had to react out of necessity" to the district court's ruling dismissing Count 2. The court repeated its willingness to entertain the motion to reconsider, saying "it seems to me that

9

that might be the better route to go at this point in time, given the stage that we are in this trial." Again, the State declined for the reasons already stated, so the court granted the State's request to dismiss Count 1 without prejudice.

Defense counsel then noted that "the interlocutory appeal statute doesn't cover this, so it would be more of just a direct appeal." The court seemed to agree with this position.

The State timely appealed the district court's dismissal of Count 2 of the indictment. Bird then filed a timely notice of cross-appeal.

ANALYSIS

I.      *This court has jurisdiction to consider the State's appeal.*

To start, Bird argues that this court lacks jurisdiction over the State's appeal because the State could not dismiss the remaining charge of the indictment. According to Bird, Kansas law only permits the amendment of the substance of an indictment in limited ways, so a county or district attorney is essentially beholden to a grand jury when it seeks to dismiss an indictment. Thus, he contends Count 1 remains pending in the district court, making this an unsanctioned interlocutory appeal.

The State responds that Bird is making this argument for the first time on appeal, since he only challenged below whether the State could dismiss Count 1 with or without prejudice. The State invokes the doctrine of judicial estoppel, asserting that this court should preclude Bird from changing his position on appeal. Alternatively, the State argues that even considering Bird's argument, this court has appellate jurisdiction because a county or district attorney has the authority to dismiss or reduce any charge as the representative of the State in overseeing criminal prosecutions.

10

*A.     This court has a duty to question its own jurisdiction.*

Generally, when a party fails to raise an issue before the trial court, they cannot raise them on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But a party may raise issues relating to subject matter jurisdiction at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Castillo*, 54 Kan. App. 2d 217, 219, 397 P.3d 1248 (2017). Moreover, an appellate court has a duty to question jurisdiction on its own initiative and must dismiss the appeal if the record shows a lack of jurisdiction. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

*B.     The State can appeal the partial dismissal of charges when the remaining charges are no longer pending.*

The right to appeal is statutory, and appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Smith*, 304 Kan. at 919. Appellate courts have jurisdiction to entertain a State's appeal only if the State appeals within time limitations and in the manner prescribed by the applicable statutes. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). The State cannot expand its elected statutory basis for the appeal, and the appellate court cannot sua sponte select the jurisdictional basis for an appeal by the State. *State v. LaPointe*, 305 Kan. 938, 954, 390 P.3d 7 (2017). Here, the State identifies K.S.A. 2017 Supp. 22-3602(b)(1), which authorizes the prosecution to appeal "[f]rom an order dismissing a complaint, information or indictment," as the basis for this court's jurisdiction.

As Bird correctly notes, the Kansas Supreme Court has long held that K.S.A. 2017 Supp. 22-3602(b)(1) does not allow the State to appeal from the dismissal of some of the counts in a multiple-count charging document while the remaining counts are still

11

pending before the district court. *State v. Freeman*, 234 Kan. 278, 282, 670 P.2d 1365 (1983); see also *State v. McDaniel*, 255 Kan. 756, 761, 877 P.2d 961 (1994) (district court loses jurisdiction once clerk of appellate courts dockets the appeal). But at the same time, Kansas law also provides that the State may voluntarily dismiss pending charges to appeal a district court's order dismissing a single count of a multiple-count complaint. See *State v. Clovis*, 254 Kan. 168, 173, 864 P.2d 687 (1993).

By granting the State's request and dismissing Count 1, the case was terminated, thus paving the way for the State to file an appeal. See *State v. Grimes*, 229 Kan. 143, 148, 622 P.2d 143 (1981) (finding that the State can only appeal as a matter of right, those cases which have terminated).

But Bird challenges the State's authority to dismiss the indictment in the first place. He makes this challenge for the first time on appeal. So we first must address the State's position that Bird is judicially estopped from making this argument.

### C.    *Judicial estoppel does not apply.*

The State contends that Bird should be judicially estopped from making a new argument on appeal that the State lacked the authority to dismiss the indictment. In response, Bird correctly points out that this court has a duty to consider challenges to subject matter jurisdiction, even if raised for the first time on appeal. See *Sander v. State*, 278 Kan. 487, 490, 102 P.3d 1136 (2004). Bird also contends that the State failed to establish the elements of judicial estoppel.

As the State notes, the Supreme Court has said that judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532

12

U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The Supreme Court disfavors reducing judicial estoppel to a precise formula or test, but recognizes that

> "'several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Zedner v. United States*, 547 U.S. 489, 504, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006) (quoting *New Hampshire*, 532 U.S. at 750-51).

Similarly, this court previously set forth four elements that must be satisfied for a party to assert judicial estoppel: "'(1) a position taken must contradict a declaration in a prior judicial action; (2) the two actions must involve the same parties; (3) the party asserting the theory must have changed its position; and (4) the changed position must have been in reliance on the prior statement.'" *Loscher v. Hudson*, 39 Kan. App. 2d 417, 425, 182 P.3d 25 (2008) (quoting *Knorp v. Albert*, 29 Kan. App. 2d 509, 518, 28 P.3d 1024 [2001]).

Bird seems to concede that these first two factors have been met, since defense counsel had objected at first before eventually accepting "after mere minutes of research" that the State must dismiss Count 1 to pursue this appeal. Yet he correctly points out that the State has not changed its position since the State believed from the outset that it had the authority to dismiss the remaining charge of the indictment. Simply put, the State has failed to provide a persuasive argument that we should estop Bird from making this argument.

13

*D. The State can dismiss a grand jury indictment in Kansas with leave of the court.*

Bird's challenge stems from two main premises: (1) that Kansas law only allows a prosecutor to amend an indictment for a limited purpose; and (2) that there is no specific statutory authority allowing a prosecutor to dismiss an indictment. To fully understand the question presented, we must briefly examine the types of charging documents and their role in Kansas criminal procedure.

*i. There are three ways to begin a criminal prosecution: complaint, information, and indictment.*

The initiation of a criminal prosecution in Kansas can happen one of three ways. Generally, a prosecution formally begins when a complaint is filed with a magistrate, or "in extreme cases" a district court judge can order the county attorney to institute a prosecution against someone. K.S.A. 22-2301(1)-(2). The complaint must contain "a plain and concise written statement of the essential facts constituting the crime charged," and "shall be signed by some person with knowledge of the facts." K.S.A. 22-3201(b); see also K.S.A. 2019 Supp. 22-2202(h) (defining "complaint"). If the complaint is supported by probable cause, the magistrate may either issue a warrant for the defendant's arrest or a summons requiring their appearance at a hearing before the court. K.S.A. 2019 Supp. 22-2302(a). From there, if the charges include a felony, the defendant is entitled to a preliminary hearing. K.S.A. 2019 Supp. 22-2902(1).

A prosecution can also begin "[i]n misdemeanor cases, cigarette or tobacco infraction cases and traffic infraction cases" with the filing of an information in the district court. K.S.A. 22-2303. An information must also contain "a plain and concise written statement of the essential facts constituting the crime charged," and must be signed by "the county attorney, the attorney general or any legally appointed assistant or

14

deputy of either." K.S.A. 22-3201(b); see also K.S.A. 2019 Supp. 22-2202(l) (defining "'[i]nformation'"). A case that begins upon the filing of an information proceeds the same as a case begun by a complaint. See K.S.A. 22-2303(1)-(2).

The final way for a prosecution to begin is upon the return of an indictment by a grand jury, which is what occurred in this case. The grand jury process in Kansas is governed by K.S.A. 2019 Supp. 22-3001 et seq., and currently allows for three methods of starting that process.

For the first 20 years of Kansas' statehood, only a court could summon a grand jury. 1868 G.S., ch. 82, § 73. Then, in 1887, the Legislature enacted changes to allow citizens to petition for a court to summon a grand jury by obtaining the signatures of 200 tax-payers of the county. L. 1887, ch. 167, § 1. For the next 124 years, the grand jury process underwent only minor changes to the type and number of qualifying signatures for a citizen-initiated grand jury petition and to require "[a] majority of the district judges" to summon a grand jury in a county in the district. K.S.A. 22-3001(1)-(2). During this time, the prosecuting attorney's role was limited to examining witnesses or advising the grand jury when requested. K.S.A. 22-3007.

But starting in 2011, the Legislature began enacting nearly annual modifications to the grand jury statute that gave prosecutors more control over the process. The first major substantive change allowed the county attorney or district attorney to petition to summon a grand jury to "to investigate alleged violations of an off-grid felony, a severity level 1, 2, 3 or 4 felony or a drug severity level 1 or 2 felony." K.S.A. 2011 Supp. 22-3001(b). As long as the petition is "in proper form, as set forth in this subsection," the chief judge of that county's district court "shall order a grand jury to be summoned." K.S.A. 2011 Supp. 22-3001(b). Within three years, the Legislature expanded the eligible crimes to include "any alleged felony law violation" and then also "any alleged misdemeanor law violation which arises as part of the same criminal conduct or investigation." K.S.A. 2013 Supp.

15

22-3001(b); K.S.A. 2014 Supp. 22-3001(b). The Legislature also made the prosecuting attorney's role mandatory for prosecutor-initiated grand jury petitions. K.S.A. 2013 Supp. 22-3007(b).

Once the grand jury—however summoned—returns an indictment on the concurrence of 12 or more grand jurors, the indictment is filed with the court and the prosecution "shall be deemed to have been begun." K.S.A. 22-2303(1). But an indicted defendant is not entitled to a preliminary hearing because "[o]nce a grand jury has handed down an indictment, a determination of probable cause has been made and a preliminary hearing is no longer necessary." *State v. Knighten*, 260 Kan. 47, 56, 917 P.2d 1324 (1996); see K.S.A. 2019 Supp. 22-2902(1).

> ii.  *The State's ability to amend charges in an indictment is limited by statute.*

A county or district attorney in Kansas must represent the interests of the State in criminal prosecutions. See K.S.A. 19-702(a) (county attorney); K.S.A. 22a-104(a) (district attorney). After a prosecution has begun by any of the three methods, the State's ability to amend the charging document is limited. For a complaint or information, the court may permit the prosecutor to amend the complaint or information "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." K.S.A. 22-3201(e). For an indictment, substantive amendments are prohibited if the grand jury was summoned under K.S.A. 2017 Supp. 22-3001(a) or (b) except "for the limited purpose of effecting a change of plea by the defendant pursuant to a plea agreement reached between the defendant and the prosecuting attorney." K.S.A. 2017 Supp. 22-3015(b)(2).

In Bird's view, dismissing the only remaining charge constituted a substantive amendment to the indictment. Referencing *State v. Dryden*, No. 119,976, 2019 WL

16

2398027, at *6 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1047 (2020), Bird asserts that the State's authority to dismiss a charge in a complaint or information stems from K.S.A. 22-3201(e). Thus, because a different statute governs an indictment with its own limits on substantive amendment, Bird contends that the State's dismissal was void. We find this argument unpersuasive for the reasons below.

> iii. *Kansas law recognizes the authority to control a prosecution includes the power to dismiss charges or decline further prosecution.*

The Kansas Supreme Court has long recognized that the authority to make charging decisions, including whether to dismiss a charge, rests with the county or district attorney.

> "A county attorney or district attorney is the representative of the State in criminal prosecutions. As such, he or she controls criminal prosecutions. It is the county or district attorney who has the authority to dismiss any charge or to reduce any charge. *State v. Turner*, 223 Kan. 707, 709, 576 P.2d 644 (1978). The prosecuting attorney has broad discretion in discharging his or her duty. The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged. *State v. Dedman*, 230 Kan. 793, 798, 640 P.2d 1266 (1982); *State v. Blount*, 13 Kan. App. 2d 347, 351, 770 P.2d 852, *rev. denied* 245 Kan. 786 (1989). The prosecuting attorney has discretion to dismiss charges, and the court cannot refuse to allow a dismissal. *Foley v. Ham*, 102 Kan. 66, 67-72, 169 Pac. 183 (1917). Similarly, the court cannot restrain a prosecutor from prosecuting an action. *State, ex rel., v. Rohleder*, 208 Kan. 193, 195, 490 P.2d 374 (1971)." *State v. Williamson*, 253 Kan. 163, 165-66, 853 P.2d 56 (1993).

A prosecutor's authority at common law to dismiss a pending criminal charge was known as a nolle prosequi. *State v. Greenlee*, 228 Kan. 712, 717, 620 P.2d 1132 (1980) ("The discretion whether or not to prosecute has long been the sacred domain of the

17

prosecutor and stems from the common law nolle prosequi."). "A nolle prosequi is a formal entry of record by the prosecuting attorney indicating that the prosecutor will no longer prosecute a pending criminal charge." 22A C.J.S., Criminal Procedure and Rights of Accused § 275. Generally, a state may dismiss a case without prejudice at any time before trial by filing a nolle prosequi. 22A C.J.S., Criminal Procedure and Rights of Accused § 279. In federal prosecutions, this limitation is memorialized by Rule 48(a) of the Federal Rules of Criminal Procedure, which provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent."

Although Bird correctly notes that there is not a Kansas statute or rule equivalent to Rule 48(a), Kansas courts have historically recognized that the court must consent when a prosecutor seeks to enter a nolle prosequi. See, e.g., *State v. Rowland*, 172 Kan. 224, 227, 239 P.2d 949 (1952) ("[T]he entering of a *nolle prosequi* with consent of the trial court did not prejudice a fresh prosecution on a new information charging the identical offense set forth in the prior information."); *State v. Child*, 44 Kan. 420, Syl. ¶ 1, 24 P. 952 (1890) ("The mere entry of a *nolle prosequi*, or the dismissal of an indictment, with the consent of the court, is no bar to the filing of another indictment or information for the same offense."). In other words, even without specific statutory authority to *amend* the substance of an indictment, the State's authority in criminal prosecutions appears to allow a *dismissal* of the indictment.

Before oral argument, the State submitted a letter of additional authority under Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39) that also addressed the dismissal of charges in an indictment. As support, the State cited *Gwathney v. Sabourin*, 269 F. Supp. 2d 63 (E.D.N.Y. 2003), which was a federal habeas action where the petitioner argued that his trial counsel was ineffective for not contesting the dismissal of some of the charges in an indictment as an unconstitutional amendment. The court in that case affirmed the trial court's rejection of that claim based on *United States v. Miller*, 471 U.S.

18

130, 145, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985) ("[W]here an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment."). Although the *Gwathney* ruling is not controlling authority, the holding from *Miller* strengthens the notion that a prosecutor can dismiss an indictment.

Finally, at oral argument the State aptly pointed out the absurdity of a rule that the State could never dismiss a grand jury indictment. What if a key witness was no longer available at the time of trial? What if it became clear that there was insufficient evidence to support the charge? An indictment is a method to *initiate* a prosecution. See K.S.A. 22-2303(1). Nothing in the grand jury statutes speak to dismissal. The State maintains the sole authority to prosecute and can ethically only proceed with charges that are supported by probable cause. See Kansas Rule of Professional Conduct 3.8(a) (2020 Kan. S. Ct. R. 363) ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause."). This further supports our finding that the prosecutor has the inherent authority to ask the court to dismiss charges. Whether the request is warranted or whether the prosecutor dismissed the charges in bad faith is an issue that the district court can address if the State refiles the charges it voluntarily dismissed.

We thus find that the State could dismiss a grand jury indictment without prejudice with the district court's consent. Because the court agreed and granted the State's request, there were no pending criminal charges when the State filed its notice of appeal. For that reason, this court has jurisdiction to consider the State's appeal.

19

II.    *The district court erred in dismissing Count 2 of the indictment.*

The State argues that the district court should not have dismissed Count 2 for including the word "knowingly" as the required culpable mental state for the alleged crime of aggravated indecent solicitation of a child. As support, the State contends: (1) the court relied on caselaw from before *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), in which the Kansas Supreme Court held that the Kansas Constitution—and not the charging document—bestows subject-matter jurisdiction on state courts to adjudicate criminal cases; (2) the court could have stricken "knowingly" as surplusage rather than dismiss the charge; and (3) the indictment mirrored the statutory language for the crime of aggravated indecent solicitation of a child, which is no longer a specific intent crime under the recodified criminal code.

Bird responds that (1) the trial court did not base its decision on lack of subject-matter jurisdiction; (2) the culpable mental state is an essential element of a crime, so the court correctly dismissed the charge as insufficient since neither the court nor the prosecutor could lawfully amend the indictment; and (3) aggravated indecent solicitation of a child remains a specific intent crime because the statutory language reflects that an alleged offender must have a specific conscious objective or desire to cause a particular result. These arguments will be discussed in turn.

A.    *The standard of review for a defective charging document is de novo.*

Appellate courts exercise de novo review when considering assertions of error in a charging document. *Dunn*, 304 Kan. at 819. A charging document is a written instrument and can involve a question of statutory interpretation, both of which are subject to de novo review. 304 Kan. at 819.

*B.*     *Bird's notice of defect was not an untimely motion to dismiss.*

The State briefly asserts that the deadline for Bird to move to dismiss had passed by the time he filed the notice of defect that ultimately led to the dismissal of Count 2. As the State notes, Bird captioned his filing as a "'Notice of Defect'" rather than a motion to dismiss, but still argued that Count 2 was "void and fails to vest jurisdiction" and asserted the court could not submit the charge to the jury.

Admittedly, Bird captioned his filing as a "Notice of Defect" rather than a motion to dismiss, but his argument implicates the language found in K.S.A. 2019 Supp. 22-3208(3) that "[l]ack of jurisdiction or the failure of the complaint, information or indictment to charge a crime shall be noticed by the court at any time during the pendency of the proceeding." The crux of Bird's argument is that the indictment failed to charge him with the crime of aggravated indecent solicitation of a child because it included a lower mental culpability element than required, thus allowing him to file the notice/motion.

*C.*     *An insufficient charging document does not divest a court of subject matter jurisdiction.*

As both parties note, the Kansas Supreme Court in *Dunn* overruled a long line of precedent holding that a defect in the charging document divests a court of subject matter jurisdiction. Instead, the court held that subject matter jurisdiction is extended to the courts by the Kansas Constitution, so deficiencies in an indictment, complaint, or information did not remove subject matter jurisdiction over criminal cases in the district or appellate courts. 304 Kan. at 811.

The *Dunn* court recognized that there are three types of charging-document defect: (1) failing to satisfy the Kansas Constitution's requirement that the charge(s) be filed in

21

the correct court and territory; (2) failing to allege facts that, if proved beyond a reasonable doubt, show the commission of a Kansas crime as required by state statutes; and (3) failing to meet the constitutional standards of providing the defendant due process and adequate notice of the charges. The first kind of defect creates a state constitutional error, the second is a state statutory error, and the third violates federal and state constitutional rights. 304 Kan. at 815-16.

For errors of the second type, *Dunn* also overruled the "categorical declaration that a charging document must include all essential elements of the charged offense to avoid insufficiency." 304 Kan. at 811. Instead, the court said the inquiry should compare the statutory definition of the charged crime to the State's factual allegations to determine "[i]f those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty." 304 Kan. at 812. If a charging document fails to pass this test, "then the State has failed to properly *invoke* the subject matter jurisdiction of the court, and an appropriate remedy must be fashioned." 304 Kan. at 812. So under the new test from *Dunn*, the question is whether proof of the facts alleged in Count 2 of the indictment would produce sufficient evidence from which a rational fact-finder could conclude beyond a reasonable doubt that Bird committed aggravated indecent solicitation of a child as it is defined by statute.

> D.      *The definitions of general and specific intent for Kansas crimes changed in 2011.*

Before 2011, the Kansas Criminal Code equated "knowing" conduct with "intentional" conduct. K.S.A. 21-3201. But as part of a larger recodification of the criminal code, the Legislature in 2011 adopted the Model Penal Code's definitions for culpable mental states. See *State v. Butler*, 307 Kan. 831, 850, 416 P.3d 116 (2018). Our criminal code now distinguishes between knowing and intentional conduct:

22

"(h) A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes. A crime may provide that any other culpability requirement is a specific intent.

"(i) A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes." K.S.A. 2019 Supp. 21-5202.

The Kansas Supreme Court has held that this change to our criminal code altered the definitions of the phrases "general intent" and "specific intent" from their common law definitions. See *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015) ("[T]he legislature does not intend for 'general intent' to necessarily mean what it once did and that 'knowingly,' as used in [the aggravated battery statute] means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result."). Our Supreme Court recently recognized that these changes reflect the historical development of the meaning of intent and embody "[t]he modern distinction between intent and knowledge." *State v. Murrin*, 309 Kan. 385, 394-95, 435 P.3d 1126 (2019) ("The 2011 recodification did more than modify the meaning of 'intent' in Kansas criminal law. Its addition of the culpable mental states statute provided guidance for classifying crimes as general or specific intent crimes.").

Despite the altered mental culpability requirements in the criminal code, whether a crime requires specific or general intent still has legal significance because it determines

23

the availability of certain defenses. See *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015) (voluntary intoxication defense not available for a crime with "knowing" requirement post-recodification); see also K.S.A. 2019 Supp. 21-5205(b) (allowing voluntary intoxication defense only "when a particular intent or other state of mind is a necessary element to constitute a particular crime").

As a result, the previous caselaw description of aggravated solicitation of a child as a specific intent crime may not have the same meaning as the required culpable mental state for the current version of the statute. See *State v. Brown*, 291 Kan. 646, 655, 244 P.3d 267 (2011) (treating aggravated indecent solicitation as specific intent crime based on pre-2011 version of the criminal code). That said, there do not appear to be any cases interpreting the current language of the statute to determine whether the crime requires specific or general intent under the post-recodification definitions of those terms. So the appropriate starting point for any inquiry requires us to focus on the language of the statute.

> E. *The plain language of K.S.A. 2019 Supp. 21-5508(b)(1) lacks any requirement for intentional conduct.*

Our standards when reviewing statutes are well-documented in Kansas. The most fundamental rule of statutory construction is that the intent of the Legislature governs if we can ascertain that intent. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. See *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 309 Kan. at 164. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or

24

ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

Under the current version of the Kansas Criminal Code, a culpable mental state is an essential element of every crime "unless the definition plainly dispenses with any mental element." K.S.A. 2019 Supp. 21-5202(a), (d). Subsection (e) provides that "[i]f the definition of a crime does not prescribe a culpable mental state, but one is nevertheless required under subsection (d), 'intent,' 'knowledge' or 'recklessness' suffices to establish criminal responsibility." K.S.A. 2019 Supp. 21-5202(e). Examples of crimes that do not require any culpable mental state include statutorily defined absolute liability offenses, DUI offenses, and violations of the Kansas Offender Registration Act. See K.S.A. 2019 Supp. 21-5203.

The indictment charged Bird with aggravated indecent liberties with a child under the age of 14 under K.S.A. 2017 Supp. 21-5506(b) (Count 1) and aggravated indecent solicitation of a child under the age of 14 under K.S.A. 2017 Supp. 21-5508(b)(1) (Count 2). Even though the State voluntarily dismissed Count 1 to pursue this appeal, it bears mentioning that Count 1 charged Bird with "intentionally" committing aggravated indecent liberties with a child under the age of 14, which tracks the definition of the crime as defined by the statute. See K.S.A. 2019 Supp. 21-5506(b)(3)(A) ("lewd fondling . . . with the *intent* to arouse" [emphasis added]).

The crime of aggravated indecent solicitation (Count 2 of the indictment) is defined as "enticing, commanding, inviting, persuading or attempting to persuade a child under the age of 14 years to . . . [c]ommit or submit to an unlawful sexual act." K.S.A. 2019 Supp. 21-5508(b)(1). The word "intent" is nowhere in this subsection. Likewise, the indictment alleged:

"On or about the 6th day of September, 2017 in the State of Kansas and County of Shawnee, STEPHEN WAYNE BIRD, did, then and there, unlawfully, feloniously, and *knowingly*, entice, command invite or persuade a child under the age of 14 years, to-wit: A.U-A. (XX/XX/08), to commit or submit to an unlawful sexual act . . . ." (Emphasis added.)

Bird argued and the district court agreed that "knowingly" was not the correct culpable mental state for the crime of aggravated indecent solicitation of a child because it is a specific intent crime. But as mentioned, the primary case supporting this argument, *Brown*, turned on the pre-2011 version of the statute, and more importantly, relied on the use of the word "solicit" in the statute to find that aggravated solicitation of a child was a specific intent crime. See K.S.A. 21-3511(a) ("Enticing *or soliciting* a child under the age of 14 years to commit or to submit to an unlawful sexual act." [Emphasis added.]); *Brown*, 291 Kan. at 655.

Apparently in direct response to *Brown*, the Legislature removed the word "solicit" from the statute—effective just a few months after *Brown* was filed. See *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012) (holding that when the Legislature revises an existing law, the court presumes that the Legislature intended to change the law as it existed prior to the amendment). Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same. *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015).

A plain reading of K.S.A. 2019 Supp. 21-5508(b)(1) shows that the statute now lacks any of the designated terms—e.g., intentionally, knowingly, or recklessly. In contrast, subsection (b)(2) of the same statute provides another way to commit aggravated indecent solicitation of a child. It makes it unlawful to entice, command, invite, persuade, or attempt to persuade a child "enter any vehicle, building, room or secluded place *with the intent* to commit an unlawful sexual act upon or with the child."

26

(Emphasis added.) K.S.A. 2019 Supp. 21-5508(b)(2); see also K.S.A. 2019 Supp. 21-5202(h) (specifically defining the terms "'intentionally'" or "'with intent'"). The absence of the terms "intentionally" or "with intent" from subsection (a) is telling.

> "One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius*, i. e., the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. [Citations omitted.]" *In re Olander*, 213 Kan. 282, 285, 515 P.2d 1211 (1973).

We agree with the State that based on the plain language of the statute the 2011 recodification changed the law and legislatively overruled *Brown*. To make it even clearer, the Legislature omitted the term "solicit" under the new version of the statute—the term the *Brown* court relied on to find that aggravated indecent solicitation was a specific intent crime. Moreover, the Legislature excluded any mention of intentional conduct in subsection (b)(1) while including it in subsection (b)(2), revealing that the omission was intentional. Under the plain language of the statute, aggravated indecent solicitation of a child under (b)(1) is no longer a specific intent crime because it lacks any "intentionally" or "with intent" language as required by K.S.A. 2019 Supp. 21-5202(h).

The PIK instructions also support this view. See PIK Crim. 4th 55.160 (2012 Supp.) ("One or more of the alternative ways of committing this crime lacks a required culpable mental state. If applicable, see PIK 4th 52.300, Definition of Crime Does Not Prescribe Culpable Mental State."). PIK 4th 52.300 states: "The State must prove that the defendant insert specific act committed by defendant intentionally, knowingly, or recklessly." The Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *Butler*, 307 Kan. at 847. We agree with the State that

27

inserting "knowingly" into the indictment was appropriate because either "'intent,' 'knowledge' or 'recklessness'" would suffice under K.S.A. 2019 Supp. 21-5202(e).

Moreover, as the district judge noted, the district court would have instructed the jury on the culpable mental state no matter if the indictment contained the word knowingly. This would reflect the suggestions in PIK 4th 52.300 noted above.

"Certainly, we instruct on three separate culpable mental states. . . .

"Certainly PIK says that if [the criminal statute] is silent and it is a crime that requires a culpable mental state, then the Court would instruct on all three, which would have been, typically, what I would've expected to do in this situation."

This position was apparently supported by Bird. Counsel requested as part of his proposed jury instructions:

"(1) that the word 'intentionally' be added to the pattern instruction for aggravated indecent solicitation of a child; and (2) that the definition of 'intentionally,' as set out in PIK Crim. 4th 52.010, be incorporated within the charging instruction for each crime."

He requested that the instruction for the charge of aggravated indecent solicitation include the word "intentionally" instead of the "knowingly" contained in the complaint. He asked that the court add the definition of "intentionally" to instruct the jury that "[*a*] *defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State*." This consistent with the definition of "intentionally" in K.S.A. 2019 Supp. 21-5202(h).

Finally, K.S.A. 22-3201(b) provides that the indictment "shall be a plain and concise written statement of the essential facts constituting the crime charged, which [indictment], drawn in the language of the statute, shall be deemed sufficient." There is

28

no dispute that the indictment was "drawn in the language of the statute" with the only variance being the addition of the word "knowingly,"—a word choice consistent with charging a crime with no culpable mental state. See K.S.A. 2019 Supp. 21-5202(e) ("If the definition of a crime does not prescribe a culpable mental state, but one is nevertheless required under subsection [d], 'intent,' 'knowledge' or 'recklessness' suffices to establish criminal responsibility.").

Since the indictment charged Bird in the language of the statute, sufficient evidence supporting those factual allegations could lead to a guilty verdict. See *Dunn*, 304 Kan. at 812. As a result, the district court erred in concluding that the indictment was defective and required dismissal.

III.    *We lack jurisdiction over Bird's cross-appeal.*

About two weeks before trial, Bird moved to dismiss the indictment against him based on a violation of his due process rights. He asserted that the grand jury improperly considered hearsay evidence in returning the indictment. The district court took up the motion at a pretrial hearing the next week. After Bird presented testimony, the State requested time to respond and the court deferred ruling on the motion at that time. Although the State responded the morning of the first day of trial, the court did not make any ruling on Bird's motion. After the State filed its appeal, Bird timely filed a cross-appeal asserting that the district court should have dismissed the entire indictment because the grand jury considered hearsay evidence, thus violating his due process rights.

As discussed, whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Smith*, 304 Kan. at 919. The right to appeal is statutory, and appellate jurisdiction exists only if the party appeals in the manner prescribed by Kansas statutes. 304 Kan. at 919. Bird faces two insurmountable hurdles to success on his cross-appeal.

29

First, Bird can only appeal from a judgment against him in the district court. K.S.A. 2019 Supp. 22-3602(a). Because Kansas law does not authorize a defendant to take an interlocutory appeal, the appeal must be from a "final judgment." K.S.A. 2019 Supp. 22-3601(a); see also K.S.A. 2019 Supp. 22-3603 (allowing interlocutory appeals by the State but not a defendant); *State v. McGaugh*, 56 Kan. App. 2d 286, 292, 427 P.3d 978 (2018) ("[I]ntermediate orders . . . may be appealed by a defendant only *after* a judgment is reached.").

Both parties recognize that the district court deferred ruling on the motion and did not issue a formal decision, yet Bird asserts the district court "implicitly denied" the motion by beginning the trial as scheduled. In his reply brief, Bird cites several cases in which Kansas appellate courts have reviewed "'implicit'" or "'tacit'" rulings in other contexts. But he overlooks that all of those appeals were brought *after* the judgments in those cases *became final*.

Even if we assume the district court did tacitly overrule his motion, Bird faces a second hurdle. In a criminal case, a judgment becomes "final" for the purposes of appeal by a defendant only after both a conviction and sentencing. *State v. Webb*, 52 Kan. App. 2d 891, 897-98, 378 P.3d 1107 (2016). Neither occurred here.

Bird also asserts that this court can review the cross-appeal issue because it presents a purely legal question and determination of the issue would serve the ends of justice. Yet he cites no authority which says that he has the right to appeal when he has not been convicted or sentenced for any offense. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). In other words, even accepting Bird's contention that the court implicitly denied his motion to dismiss, he has not perfected his right to appeal that ruling

30

to give this court appellate jurisdiction over his claims. As a result, we dismiss his cross-appeal. He is free to raise this issue before the district court on remand.

CONCLUSION

In sum, we find that we have jurisdiction to consider the State's appeal because the State can appeal from the partial dismissal of an indictment when there are no other charges pending before the district court. Although Kansas law prevents a prosecutor from substantively amending an indictment, courts have traditionally recognized that a county or district attorney's control of a prosecution includes the authority to dismiss pending charges with leave of the court.

Next, we find that the district court did err in dismissing Count 2 of the indictment. Aggravated indecent solicitation of a child under K.S.A. 2019 Supp. 21-5508(b)(1) is a general intent crime, and use of the culpable mental state of "knowingly" did not render the complaint defective.

And finally, we find that we have no jurisdiction over Bird's cross-appeal.

Reversed in part and dismissed in part.